UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DENISEALEE HERNANDEZ,<br><br>                        Plaintiff,<br><br>    v.<br><br>CAROYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>                        Defendant. | 3:13-cv-00391-RCJ-WGC<br><br>**REPORT & RECOMMENDATION**<br>**OF UNITED STATES MAGISTRATE**<br>**JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Denisealee Hernandez's Motion for Reversal and/or Remand. (Doc. # 11.)[1] Defendant Commissioner filed a response and a Cross-Motion to Affirm. (Docs. # 16, # 17.)[2] Plaintiff filed a reply. (Doc. # 18.) After a thorough review, the court recommends that Plaintiff's motion (Doc. # 11) be denied, and that the Commissioner's motion (Doc. # 17) be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 22, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB). (Administrative Record (AR) 170-176.) On April 2, 2010, she filed an application for Supplemental Security Income (SSI). (AR 177-80.) In both applications, she alleged an onset of disability beginning February 9, 2010. (AR 170, 177.)

The Commissioner denied these applications initially and on reconsideration. (AR 41-75,

---

[1] Refers to court's docket number. Unless otherwise indicated, all page number references are to the court's docketed page numbers.

[2] These documents were docketed separately by the Clerk, but are identical.

84-87.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ) to challenge the Commissioner's determination.

On March 7, 2012, Plaintiff appeared and testified at a hearing before the ALJ. (*See* AR 23.) The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on March 15, 2012, finding Plaintiff was not disabled pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision. (AR 20-34.) Plaintiff appealed the decision and the Appeals Council denied review. (AR 1-4.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision to the District Court. (Doc. # 11.) Plaintiff argues the ALJ improperly rejected the opinion of consultative examiner, Robert Wildman, Ph.D., who performed a consultative psychological evaluation of Plaintiff in June 2010. (*Id*.) The Commissioner disputes Plaintiff's contentions, and argues the record as a whole supports the ALJ's determination. (Docs. # 16, # 17.)

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

1    20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no
2    more than minimal functional limitations, the Commissioner will find that the claimant is not
3    disabled. 20 C.F.R.§ 404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner
4    finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

5          In the third step, the Commissioner looks at a number of specific impairments listed in 20
6    C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the
7    impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.
8    § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed
9    Impairments are severe enough to preclude any gainful activity, regardless of age, education, or
10   work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of
11   the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed
12   disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is
13   severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to
14   step four. *Yuckert*, 482 U.S. at 141.

15         At step four, the Commissioner determines whether the claimant can still perform "past
16   relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past
17   relevant work is that which a claimant performed in the last fifteen years, which lasted long
18   enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.
19   § 404.1565(a) and § 416.920(b)(1). The Commissioner reviews the claimant's "residual
20   functional capacity" (RFC) and the physical and mental demands of the work previously
21   performed. *See id.; see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what
22   the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In
23   determining RFC, the Commissioner must assess all evidence, including the claimant's and
24   others' descriptions of limitation, and medical reports, to determine what capacity the claimant
25   has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

26         At step four, the Commissioner may consider any of the claimant's daily activities that
27   "may be seen as inconsistent with the presence of a condition which would preclude all work
28   activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability

benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); *compare Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir. 2007) (nothing that "many home activities are not easily transferrable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094,

1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The Commissioner may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotation marks and citation omitted).[3] Further, where the Commissioner finds that a nonexertional limitation alone is severe (at step two of the sequential process) (absent any exertional limitation), the Commissioner is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitations are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,

---

[3] "[S]atisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai*, 499 F.3d at 1076.

- 6 -

if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of February 9, 2010. (AR 25.)

At step two, the ALJ found it was established that Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease (COPD), chronic pancreatitis, fibromyalgia, generalized anxiety disorder, and major depressive disorder. (AR 25.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or is the equivalent of one of the Listed Impairments. (AR 26.) The ALJ noted that in activities of daily living, social functioning, and concentration Plaintiff has moderate difficulties. (*Id.*)

At step four, the ALJ found Plaintiff had the RFC to perform light work but included the following limitations:

> [N]o more than occasional climbing ramps/stairs, ladders/ropes/scaffolds, stooping, crouching, or crawling, and no more than frequent balancing, kneeling, reaching bilaterally (including overhead), or bilateral gross/fine manipulation. The claimant must avoid concentrated exposure to irritants, and even moderate exposure to vibration, moving or hazardous machinery, or unprotected heights. She is further limited to simple, routine, and repetitive tasks with no more than occasional contact with the public or co-workers.

(AR 28.)

In making this finding, the ALJ states that he considered all symptoms and the extent to which they could be accepted as consistent with the objective medical evidence and opinion evidence. (*Id.*) In view of Plaintiff's RFC and consultation with a vocational expert, the ALJ determined Plaintiff was unable to perform past relevant work because given her limitations on public contact she could not perform past relevant jobs as a cashier. (AR 32.)

**5. Step Five**

The ALJ stated that Plaintiff was fifty years old, which is "closely approaching advanced

age," on the disability onset date. (*Id*.) She had limited education and was able to communicate in English. (*Id*.) Transferability of job skills was not material to the determination of disability because a finding of not disabled was supported whether or not she had transferable job skills. (*Id*.)

The ALJ noted that if Plaintiff had the RFC to perform the full range of light work, a finding of not disabled would be directed, but Plaintiff's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. (*Id*. at 33.) To determine how much these limitations eroded the unskilled, light occupational base, the ALJ asked the vocational expert whether jobs exist in the national economy for a person with Plaintiff's age, education, work experience and RFC, and the vocational expert testified that given these factors, the person would be able to perform the requirements of representative occupations such as: officer helper (Dictionary of Occupational Titles (DOT) code 239.567-010); storage facility clerk (DOT code 295.367-026); and mail clerk (DOT Code 209.687-026). (*Id*.) Thus, the ALJ determined Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id*)

Based on this finding, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*.)

**C. Propriety of the ALJ's Consideration of Dr. Wildman's Opinion**

**1. Plaintiff's Position**

Plaintiff contends that the ALJ improperly rejected Dr. Wildman's opinion that Plaintiff's mental impairments caused severe interference with the ability to maintain concentration. (Doc. # 11 at 7-10.) Plaintiff says that the ALJ rejected Dr. Wildman's opinion for two reasons:

(1) because her concentration problems could be improved with psychotherapy; and

(2) Dr. Wildman had the impression that Plaintiff was exaggerating the extent of her limitations. (*Id*. at 8.) Plaintiff argues that the first reason for rejecting Dr. Wildman's opinion lacks merit because Plaintiff has not improved with psychotherapy treatment as of her hearing date. (*Id*.) Plaintiff stopped attending her counseling sessions because she thought it made her anxiety worse. (*Id*. at 9.)

1    Plaintiff then argues that the ALJ's second reason for rejecting Dr. Wildman's opinion
2 fails because Dr. Wildman himself stated that the exaggeration was on the stated daily activities,
3 not the testing itself, and took them into consideration when he found Plaintiff could perform a
4 "mildly wide array of mildly detailed instructions." (*Id*. at 9.) Despite that finding, Dr. Wildman
5 concluded that Plaintiff's anxiety would severely interfere with the ability to maintain
6 concentration and attention. (*Id*.)

7    Thus, Plaintiff argues that the ALJ did not set forth specific and legitimate reasons for
8 rejecting Dr. Wildman's opinion. (*Id*.) Plaintiff asks the court to take Dr. Wildman's testimony as
9 true and make a finding of disability and award benefits. (*Id*. at 10.)

10   **2. The Commissioner's Position**

11   The Commissioner points out that the ALJ afforded "great weight" to Dr. Wildman's
12 opinion. (Docs. # 16, # 17 at 4.) Dr. Wildman first concluded Plaintiff was "potentially capable
13 of understanding, remembering, and carrying out a mildly wide array of mildly detailed
14 instructions" and that she was "moderately impaired" in her ability to interact appropriately with
15 coworkers, supervisors and the general public. (*Id*.) Dr. Wildman also concluded Plaintiff's
16 anxiety disorder "interferes with her ability to maintain concentration and attention at a severe
17 level." (*Id*.)

18   The Commissioner argues that the ALJ did not reject Dr. Wildman's conclusion regarding
19 restrictions in maintaining attention and concentration, but found Dr. Wildman's views of
20 Plaintiff's limitations in attention and concentration supported the RFC finding that Plaintiff
21 could perform simple, routine and repetitive tasks. (*Id*.)

22   **3. Plaintiff's Reply**

23   In her reply brief, Plaintiff argues that the functional ability to perform simple, routine,
24 repetitive tasks does not address Plaintiff's concentration issues. (Doc. # 18 at 3.) She asserts that
25 courts often associate a limitation to simple and repetitive tasks with reasoning development, and
26 in this circuit that has been associated with a limitation to simple repetitive tasks with reasoning
27 level two work. (*Id*. at 4.) The DOT defines reasoning level two work as the ability to "[a]pply
28 commonsense understanding to carry out detailed but uninvolved written or oral instructions.

1    Deal with problems involving a few concrete variables in or from standardized situations." *Id*.
2    Plaintiff reasons that therefore the limitation to simple repetitive tasks applies to the ability to
3    apply understanding and deal with problems. (*Id*.) She argues that concentration, on the other
4    hand, is the "ability to sustain focused attention and concentration sufficiently long to permit the
5    timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 4,
6    Subpart p, App. 1, Listing 12.00(C)(3). She contends that a person may be able to apply
7    understanding and deal with problems, but be unable to do so on a sustained basis for eight hours
8    a day, five days a week. (*Id*.)

9    Plaintiff also asserts that Dr. Wildman's overall report supports a finding fully favorable
10   to Plaintiff, with a recommendation for review of the file to determine whether Plaintiff
11   improved with proper mental health treatment. (*Id*. at 5.)

12   **4. Analysis**

13   As the court indicated above, the ALJ's determination must be based on proper legal
14   standards and the findings must be supported by substantial evidence—"that which a reasonable
15   mind might accept as adequate to support a conclusion"—based on the record as a whole.
16   *Gutierrez*, 740 F.3d at 522, 523-24 (quoting *Hill*, 698 F.3d at 1159).

17   Here, the ALJ's determination that Plaintiff was not disabled under the Social Security
18   Act hinged on his finding at step five, that Plaintiff could perform work available in the national
19   economy, having found that she could not perform past relevant work at step four. In deciding
20   whether a claimant can perform work available in the national economy, the ALJ was tasked
21   with considering Plaintiff's RFC (what she could still do despite her limitations), her age, her
22   education, and her past work experience. *Yuckert*, 482 U.S. at 141-42.

23   Plaintiff takes issue with the ALJ's conclusions regarding Plaintiff's RFC. Specifically,
24   Plaintiff argues that the ALJ improperly rejected the consultative examiner's opinion regarding
25   the limitations on Plaintiff's ability to concentrate, termed "severe" by Dr. Wildman and which
26   Plaintiff asserts should have resulted in a finding of disabled.

27   After considering the record, including Plaintiff's medical records, medical opinions,
28   Plaintiff's testimony, and a statement from Plaintiff's sister, the ALJ concluded Plaintiff has the

1    RFC to perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b), with some
2    additional limitations. (AR 28.) The limitations that pertain to this motion are that Plaintiff was
3    restricted to "simple, routine, and repetitive tasks with no more than occasional contact with the
4    public or co-workers." (AR 28.)
5         The ALJ acknowledged Plaintiff's subjective-symptom testimony as it related to her
6    asserted mental impairments, but found that the objective medical evidence did not fully support
7    her allegations of debilitating mental health symptoms insofar as they concern her ability to
8    work. (AR 30.) He pointed to her medical records which indicated her depression and anxiety
9    were well-controlled with medications. (*Id*.) He also pointed out that she failed to follow up on
10   treatment recommendations for counseling, stating that this suggested "her symptoms may not be
11   as serious as she has alleged." (AR 31.)
12        The ALJ then discussed Plaintiff's psychological examination in June 2010 with
13   Dr. Wildman. (AR 31.) The ALJ noted that Dr. Wildman had opined that Plaintiff was "capable
14   of understanding, remembering, and carrying out a mildly wide array of mildly detailed
15   instructions." (*Id*.) The ALJ said that Dr. Wildman based this on her performance on cognitive
16   tasks, and that Dr. Wildman had "tak[en] into account the interfering factors of her anxiety and
17   depression." (*Id*.) The ALJ then referenced Dr. Wildman's opinion that Plaintiff's "ability to
18   interact appropriately with coworkers, supervisors, and the public was moderately impaired"
19   which the ALJ said Dr. Wildman had based on her "manifestations of her anxiety such as
20   rocking motions and distractibility which would cause an impairment in interpersonal
21   relationships." (*Id*.) The ALJ went on to discuss Dr. Wildman's opinion that Plaintiff's "anxiety-
22   based disorder interfered with her ability to maintain concentration and attention at a severe
23   level, based upon her failure of the digit span cognitive tasks." (*Id*.) The ALJ pointed out that
24   Dr. Wildman had also opined "that was something that could be improved
25   psychotherapeutically." (*Id*.) Next, the ALJ referenced Dr. Wildman's statement that "he had the
26   distinct impression that the claimant was exaggerating the extent of her limitations" and that
27   "[h]e felt she was potentially capable of functioning at a higher level than [she was] reporting."
28   (*Id*.)

1    The ALJ accorded Dr. Wildman's opinion great weight, finding it in accord with the
2 record as a whole. (*Id*.)
3    Because Plaintiff contends that the ALJ improperly rejected or improperly interpreted
4 Dr. Wildman's opinions, a review and discussion of Dr. Wildman's report itself is warranted.
5 Dr. Wildman's assessment of Plaintiff begins by stating that  Plaintiff "considers herself to be
6 highly impaired by all of her physical and mental problems"; however, Dr. Wildman stated that
7 he had "the distinct impression that this woman was exaggerating the extent of her limitations[.]"
8 (AR 652.) Consequently, he stated that he felt that she was "potentially capable of functioning at
9 a higher level than she is reporting currently." (*Id*.) He went on to state: "I believe this woman is
10 potentially capable of understanding, remembering, and carrying out a mildly wide array of
11 mildly detailed instructions, which I think is consistent with her performance on the cognitive
12 tasks as well as taking into account the interfering factors of her anxiety and depression." (*Id*.)
13    With respect to her ability to interact appropriately with coworkers, supervisors and the
14 public, Dr. Wildman considered Plaintiff to be "moderately impaired" and that "such
15 manifestations of her anxiety as her rocking and distractibility would cause such an impairment
16 in interpersonal relationships." (*Id*.)
17    He said the following about her anxiety: "I feel that at this time this woman's anxiety-
18 based disorder interferes with her ability to maintain concentration and attention at a severe
19 level, as shown in her failure of the digit span cognitive task. But I do think that this is something
20 that could be improved psychotherapeutically..." (*Id*.)
21    The ALJ is responsible for determining credibility, resolving conflicts in medical
22 testimony, and resolving ambiguities in the evidence. *Magallanes v.  Bowen*, 88 1F.2d 747, 750
23 (9th Cir. 1989) (citations omitted). Various medical sources and opinions, including those of
24 treating, examining, and non-examining physicians, are taken into account by the ALJ, and the
25 final responsibility for deciding issues on the nature and severity of impairments is reserved to
26 the ALJ. *See* 20 C.F.R. §  404.1527(d)(2) and §  416.927(d)(2). Generally, more weight is given
27 to a medical source who has examined a claimant. 20 C.F.R. §  404.1527(c)(1) and
28 §  416.927(c)(1). "[W]hen evidence is susceptible to more than one rational interpretation, the

1  ALJ's conclusion must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601
2  (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

3  The court finds that the ALJ's interpretation of Dr. Wildman's opinion was rational, and
4  while Dr. Wildman did opine that Plaintiff's anxiety-based disorder was a severe limitation, it
5  was within the ALJ's province to consider this statement in conjunction with Dr. Wildman's other
6  observations and conclusions regarding Plaintiff's exaggeration of her symptoms and that her
7  difficulty concentrating could be improved with psychotherapy. Therefore, the court finds that
8  substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff could
9  perform other work in the national economy with the prescribed limitations on her contact with
10 the public and co-workers and the restriction to simple, routine and repetitive tasks.

11 Plaintiff argues that the limitation to simple, routine and repetitive tasks did not take into
12 account the severe limitation Plaintiff's anxiety imposed on her ability to concentrate; however,
13 the ALJ apparently did not draw the distinction between the ability to concentrate and the ability
14 to understand problems as narrowly as Plaintiff. Instead, the court finds the ALJ properly
15 considered and acknowledged Plaintiff's severe limitation, but when faced with Dr. Wildman's
16 other opinions regarding Plaintiff's limitations, rationally concluded that the restrictions imposed
17 were sufficient to allow Plaintiff to perform other work in the national economy. If the evidence
18 can reasonably support either affirming or reversing, 'the reviewing court may not substitute its
19 judgment' for that of the Commissioner." *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21
20 (9th Cir. 1996)). As a result, the court recommends that Plaintiff's motion be denied and the
21 Commissioner's motion to affirm be granted.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>** Plaintiff's Motion for Reversal and/or Remand (Doc. # 11) and **<u>GRANTING</u>** the Commissioner's Cross-Motion to Affirm.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen

1  days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and
2  Recommendation" and should be accompanied by points and authorities for consideration by the
3  District Court.
4      2. That this Report and Recommendation is not an appealable order and that any notice of
5  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed
6  until entry of the District Court's judgment.

DATED: May 30, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE